UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 08-314 (JRT/AJB) |
| v. | ) | |
| | ) | |
| | ) | **DEFENDANT'S SENTENCING** |
| MATTHEW BRADLEY DEPALMA, | ) | **POSITION** |
| | ) | |
| Defendant. | ) | |

Matthew DePalma, through counsel, submits the following sentencing position. Although the nature of the instant offense is serious, given Mr. DePalma's minor criminal history and other mitigating personal characteristics, he seeks a below-guidelines sentence of no more than 36 months. Mr. Depalma has no objections to the PSR.

A close look at Matthew DePalma's childhood and early adulthood give no indication that he would stand where he does today: prepared to be sentenced for a serious federal offense with serious consequences for his young life. While his childhood was modest, his family taught values that were central to his formative years. He was raised in a religious family, and home schooled for a significant portion of his school years. Eventually, Mr. DePalma moved to public schooling, and was confronted with the reality of the severe poverty in Flint, Michigan. It was at this point in his life, as his mother observed in the PSR, that it became important for Mr. Depalma to stand up for the feeble.

He also recognized that many of his peers did not see what he saw: serious concern for the future of his generation. He could not comprehend how his generation did not feel the need to focus on those who were less fortunate. These feelings and beliefs eventually evolved into a passion for the cause of speaking out for people who could not speak for themselves. These life circumstances show that despite this offense, Mr. DePalma began with good intentions, and a genuine concern for others.

Unfortunately, what is also clear, as evidenced by the instant case, is that Mr. DePalma made the wrong choice in terms of how best to implement his passion and beliefs. Mr. DePalma, despite being a bright and capable young man, was prone to let his passions overtake his judgment. In essence he was impatient, and that impatience was central to the events that led to this offense.

Ultimately, the sentencing guidelines provide for a calculation of what penalty should be imposed for what happened in the days leading up to Mr. DePalma's arrest. What the guideline calculations do not capture, however, is that the nature of the offense and Mr. DePalma's background demonstrate that a below-guidelines sentence meets the statutory sentencing mandates. Under 18 U.S.C. § 3553(a) the Court shall impose a sentence "sufficient, but not greater than necessary" and shall consider

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;

>(C) to protect the public from further crimes of the defendant; and
>(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

In the years following the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005) the relationship between a sentencing court and the sentencing guidelines has evolved well beyond the "advisory" label given to the guidelines by the Supreme Court. In more recent decisions, the Supreme Court has elaborated on the discretion a district court has to make sentencing decisions based on the facts of each case. *Kimbrough v. United States*, 128 S.Ct. 558, 575-76 (2007); *Gall v. United States*, 128 S.Ct. 586, 597-98 (2007). The practical reality after these decisions is that a sentencing judge, in evaluating each unique person that stands to be sentenced along with facts of each case may "reject (after due consideration) the advice of the Guidelines." *Kimbrough*, 128 S.Ct. at 577 (Scalia, J., concurring).

The sentencing procedures set forth by the Supreme Court make clear that the recommended guideline range is just that: a recommendation. For a sentencing judge, "the Guidelines should be the starting point and the initial benchmark" in determining a sentence. *Gall*, 128 S.Ct. at 596.

>[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. *In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented.*

3

*Gall*, 128 S.Ct. at 596-97 (citation and footnote omitted) (emphasis added).

As recently as January 2009, the Supreme Court has continued to isolate and highlight the discretion that a sentencing judge has: "Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable. . . The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." *Nelson v. United States*, 129 S.Ct. 890, 892 (2009).

It is of special significance to this case that the recommended guideline range may not be presumed reasonable. Mr. DePalma, with no criminal history, is now suddenly confronted with a federal felony conviction, and significant prison time. Although the sentencing guidelines provide for Mr. DePalma to fall into criminal history category I, for someone of his age who has had no meaningful contact with the criminal justice system before this arrest, the deterrent effect of any sentence will have a greater impact that the guidelines can truly represent. The life that he now must lead as a federal felon will be a constant reminder of his mistake. Given these circumstances, even a below-guidelines sentence will adequately punish Mr. DePalma and provide significant deterrence.

Further, the unique circumstances surrounding Mr. DePalma's offense—a national political convention—combined with his lack of criminal history, suggest that the likelihood of reoffense is particularly low. Aside from this offense, there is simply nothing else in his past that suggests violent or destructive conduct will be part of his life in the future. Mr. DePalma is an intelligent young man, and incredibly capable of putting

his talents to good use. His post-release plans include continuing his college education. He is equipped to make legal choices to act on his passionate beliefs. Because the Court is free to fashion a sentence that fits Mr. DePalma, a sentence of no more than 36 months is a just penalty for this offense.

## Conclusion

Considering the arguments above, the defendant asks that the Court sentence him to a term of imprisonment of no more than 36 months.

Dated: March 10, 2009                               Respectfully submitted,


                                                    *s/ Reynaldo A. Aligada, Jr.*

                                                    REYNALDO A. ALIGADA, JR.
                                                    Attorney ID No. 319776
                                                    Attorney for Defendant
                                                    107 U.S. Courthouse
                                                    300 South Fourth Street
                                                    Minneapolis, MN 55415